No. 22.—JOHN J. SNELLING, plaintiff in error, *vs.* SIMEON PARKER and another, defendants.

[L.] The Act of 1822, which declares that, "In cases where an appeal is entered from the first verdict, the property of the party against whom the verdict is rendered, shall not be bound, except from the signing of the judgment on the appeal, except so far as to prevent the alienation, by the party, of his, her or their property, between the signing of the first judgment and the signing of the judgment on the appeal," is intended only to prevent the alienation of property by the defendant, pending the appeal, to the injury of the plaintiff: *Held*, that under this Act, two judgments being obtained in favor of two plaintiffs at the same term, against the same defendant, upon one of which only an appeal is entered, and pending that appeal, the defendant aliens his property, which is finally brought to sale, after a judgment on the appeal, the judgment on the appeal is not entitled to share in the distribution of the fund, with the judgment at Common Law, upon which no appeal was entered.

Rule against Sheriff, Talbot Superior Court. Decided by Judge ALEXANDER, September Adjourned Term, 1849.

The only question in this case, arose upon the following agreed statement of facts:

At the December Term of the Inferior Court of Talbot County, 1842, John S. Buckner and John J. Snelling, each obtained a judgment against Charles Evans. An appeal was entered from the judgment in favor of Snelling—which appeal was determined at March Term, 1846, and a judgment entered in favor of Snelling. It was farther agreed, that the money in the hands of the Sheriff, was raised out of property aliened and sold by Evans, after the first judgment, and before the judgment on the appeal. Buckner and Snelling both claimed the amount in the Sheriff's hands.

The Court ordered the whole amount to be paid to Buckner, and Snelling excepted.

L. B. SMITH, for plaintiff in error, cited—

*Harden vs. Stovall, Simmons & Co.* 1 *Kelly,* 95.

WORRELL, for defendant.

The Court not being unanimous in their decision, pronounced their opinions *seriatim.*

NISBET, J. delivering the opinion of the Court.

[1.] Two judgments were obtained by two different plaintiffs against the same defendant, at Common Law ; upon one of them an appeal was entered, upon the other no appeal was entered. Intervening the date of the judgment at Common Law, and the judgment rendered on the appeal, in the appeal case, the defendant aliened his property. After the judgment on the appeal, his property was levied upon and sold. The money arising from the sale, being in the hands of the Court for distribution, the plaintiff in the judgment on the appeal claimed to be let in upon equal footing with the judgment at Common Law, from which there had been no appeal—that judgment contesting, denied the right of the appeal judgment to be so let in—claiming the whole fund upon its own prior and better lien. The Court below ordered the whole fund to be paid to the Common Law judgment. The

Snelling *vs.* Parker and another.

plaintiff in the appeal judgment excepted, and that order is for the review of this Court.

The judgment of this Court is, that the Circuit Court administered the law correctly. By Statute, all judgments take lien from the term at which they are rendered. This is the general rule. By this rule, how stand these two judgments, when both were rendered at Common Law? Both stood upon the same platform—both acquired a lien—and the liens were equal; and had no appeal been entered upon either, they would have equally bound all the property of the defendant, and would have been entitled to share in the distribution of this fund. But one is appealed from and the other is not. How, then, stands the case? Why, the judgment upon which there is no appeal, stands unaffected by the appeal entered on the other. Its lien is perfect still. It binds all the property of the defendant, whether it shall be aliened or not. It is bound to share with no judgment at the time of its date, not rendered.

But the effect of the appeal on the other judgment is, to prevent the lien which it held before the appeal. The appeal opens the whole case—it renews the litigation before the appellate tribunal. When it reaches that tribunal, the case is before it in its totality. When an appeal is entered, there is no judgment. Whether there ever will be a judgment or not in the case for the plaintiff, depends upon the event of the trial on the appeal. If the trial results in favor of the plaintiff, then, and not till then, is there any lien created for him, except *in one single instance and for one single purpose.* These exceptions are created by the Act of 1822. That Act not only creates the exceptions which I will state, but it declares all the principles in relation to these two judgments, which I have before stated. For example, it declares, " that all the property of the party against whom a verdict shall be entered, and a judgment signed thereon, in conformity to the provisions of the 26th section of the Judiciary Act of 1799, shall be bound *from the signing of the first* judgment, in cases where *no appeal is entered.*" That is to say, if an appeal is entered, the first judgment does not bind the property of the defendant, from its signing. Now, this judgment at Common Law, not being appealed from, by this very Act, acquired an unrestricted, unlimited, absolute lien upon all this property, and, of course, the money raised from the sale of it, at the time it was *first signed. Then*

it had no competitor—now it has none, as we shall see. The full lien which this Statute gave it, when first signed, accompanies it to the time when it seeks its satisfaction before this Court, wholly unimpaired by any thing that I can see. If this Act stopped just here, the inference would be irresistible, that a judgment appealed from, does not bind the property of the defendant from the time of its first signing. But it does not stop here. It declares farther, that in cases where *an appeal is entered* from the first verdict, the property of the party against whom the verdict is rendered, shall *not be bound, except from the signing of the judgment on the appeal*. Thus declaring all the propositions I have laid down as to the effect of an appeal. But now comes the exceptions to which I just now referred. The Act proceeds, " *except* so far as to *prevent the alienation* by the party, of his, her or their property, between the signing of the first judgment and the signing of the judgment on the appeal." By which I understand the Act to say, that the first signing of a judgment which is appealed from, has generally no effect—creates no lien whatever—and that the property of the defendant is not bound until the signing of the judgment on the appeal, *except in one instance,* and that is where the defendant aliens his property; and *except for one purpose,* and that is to prevent such alienation. Words cannot be plainer. The property of the defendant is not bound, by *the terms of the Act,* except where it is aliened, and to prevent the alienation. Now, because the judgment on the first trial is a judgment for that purpose, it is contended that a lien is created for it on such property as is aliened. This I do not deny; but it is, to my mind, a lien good only against the title of the purchaser. As between him and the plaintiff in that judgment, his title must yield; and when his property is sold, the plaintiff, if not superseded by a better lien, will take the money. The object of the law clearly is, to prevent a fraudulent alienation of property, by defendants, pending an appeal, to the injury of parties plaintiffs. To prevent that, the law gives effect to the first judgment, in case of appeal, and for no other purpose. It gives no effect to it as against other judgments not appealed from. They stand with a perfect prior lien, unaffected by this Act. They are neither benefited nor injured by it. Their lien binds the property at all events. But the construction contended for, would injure them, in all cases where the property aliened is all the property of the

Snelling *vs.* Parker and another.

defendant, and is not sufficient, as in this case, to pay both judgments.   This construction impairs the lien of judgments, from which there is no appeal—it holds them in abeyance, so far as aliened property is concerned, and compels them to take, *pro rata,* with a judgment perhaps six months, it may be six years, younger.   But how is it possible to extend the exception in the Statute beyond its terms?   The rule is, that judgments appealed from, do not bind property, except from the signing of the judgment on the appeal.   The exception is, that they do bind it for the purpose of preventing alienation.   Now, how can this exception be so enlarged as to give effect to judgments appealed from, not only to prevent alienation, but farther, for the purpose of weakening and limiting the liens of other judgments?   The idea is plainer thus—the rule is, judgments appealed from, are no judgments but from the signing of the judgment on the appeal.   The exception is, they *are judgments to prevent alienation.*   How can this exception, in contravention of the rule, make them judgments for another purpose, to wit: for the purpose of holding (in case property is aliened) equal lien with judgments whose lien is older and better by the general Law?   By all rules of construction, the exception proves the rule and excludes any other construction.   One of the consequences of the construction I am combatting, will be to put it in the power of a defendant, when an appeal is entered, by selling his property, to lessen the claim of a subsisting judgment.   It gives him the power to let in the claim of the plaintiff on the appeal, even if founded on an open account, equally to participate in a fund raised from aliened property, with a judgment.   If that be the true construction, then, in cases like this, the plaintiff on the appeal ought and would desire, that the defendant should sell his property, since, by the sale alone, he gets a claim upon it, equal to the judgment not appealed from ; whilst, at the same time, to prevent such sale is the very object which the Act of 1822 has in view.   But the construction which we give to the Act, whilst it maintains the dignity of the judgment not appealed from, gives to that Act a specific and highly beneficial effect.   That effect is, pending an appeal, to prevent an alienation of his property by the defendant, to the prejudice of the plaintiff's claim.

Let the judgment below be affirmed.

LUMPKIN, J. concurring—

The preamble to the Act of 1822 sets forth, that " a contrariety of decisions having taken place in the different Courts of this State, as to the time when the property. of the party against whom judgment is entered, shall be bound, &c." *Enacts*, " that from and after the passing of said Act, all property of the party against whom a verdict shall be rendered, and a judgment signed thereon, in conformity to the provisions of the 26th section of the Act of 1799, shall be bound from the signing of the first judgment, *in cases where no appeal is entered ;* but in cases where an appeal is entered from the first verdict, the property of the party against whom the verdict is rendered, shall [not] be bound, except from the signing of the judgment on the appeal—except so far as to prevent the alienation, by the party, of his, her, or their property, between the signing of the first judgment and the signing of the judgment on the appeal." *Prince*, 451.

I have transcribed only so much of this Act as relates to the question to be decided, which is this : Two judgments were obtained at the same Court, from one of which an appeal was entered, and prosecuted to a second and final trial.   The defendant in both judgments, between the signing of the first judgment and the signing the judgment on the appeal, alienated a portion of his property, which has been levied on and sold, and the money brought into Court for distribution.   Do these judgments take, *pro rata,* or does the judgment which was unappealed from, and which, consequently, is prior in date, have the preference ?

If the words of this Statute were doubtful, the preamble would furnish a key to its meaning.   It recites that a contrariety of decisions had taken place in the different Circuits of the State, as to the time when the property of the party against whom a judgment is entered, shall be bound.   Some of the Courts held, that notwithstanding an appeal was entered, all the property of the defendant was bound from the first judgment; others, that the entry of the appeal vacated the first judgment, unless it was dismissed, when, of course, the first judgment stood affirmed.   Now, in view of this controversy, the Legislature declare, that all the property of the party shall be bound, according to the provisions of the 26th section of the Act of 1799, from the signing of the

first judgment, *in cases where no appeal is entered.* But if an appeal is entered, then the property of the defendant *shall not* be bound, except from the signing of the judgment on the appeal—except *so far* as to prevent its alienation.

For myself, I do not feel at liberty to say that *it shall be* bound beyond this.

Besides settling the contrariety of decisions which had sprung up in the Courts *against* the lien of the first judgment, in cases of appeal, the Legislature seem to have had but a single object in view, in passing this Act, and that was, to prevent the alienation, by the defendant, of his property, intermediate the first and second judgment. And the justice and propriety of this was suggested, no doubt, by the fact, that they had already declared, in the previous part of the section, that no lien was created on the property, provided an appeal was entered. They then enact, by way of exception, in the conclusion of the section, that the defendant shall not alienate his property, so as to weaken or defeat the rights of the creditor, or the security on the appeal, in the event of his having the debt to pay; but that both shall be remitted back, if necessary, to the first judgment; that is, the Legislature intended to say, and have said, in so many plain English words, that for the protection of the appeal creditor, and the security on the appeal—a favorite class with all our laws—*all* the property which the defendant held at the time the first judgment was rendered, shall be retained and held subject to the ultimate recovery in the case ; and that if the defendant attempts to dispose of it, it may be followed in the hands of the purchaser, and made liable. Otherwise, the elder judgment, which was unappealed from, finding it more convenient to seek satisfaction out of the property in possession of the debtor, the lien would have been lost to the appeal creditor, upon that which was conveyed away, and his own safety, as well as the indemnity of the security on the appeal, jeopardized.

But, I ask, did the Legislature design to interfere with the relative liens of judgments, as fixed by the Judiciary Act of 1799 ? To my mind, it is plain that they did not. Indeed, it would seem to me, that they had not left the matter to conjecture; for the Act itself expressly declares, that in cases where an appeal is entered from the first verdict, the property of the party against whom the verdict is rendered, shall not be bound, except from

the signing of the judgment on the appeal. Is it not manifest, therefore, that the Legislature did not intend to disturb the law of lien, as it previously existed, between the judgments themselves ?

But, while it is conceded that all this is true, where the defendant makes no attempt to sell his property, yet that fact, under the Statute, fixes the appeal lien from the first verdict. Such, however, is not the language of the Statute. It is true that that event creates a qualified lien, from the date of the first judgment. But for what purpose, and to what extent ? I answer, in the terms of the law itself, " *so far as to prevent the alienation by the defendant ;*" but not so far, I respectfully add, as to interfere with the lien of an older judgment.

And why should it be so ? Under this Act, by no shift or device on the part of the debtor himself, or in connection with the other judgment creditors, can he prevent the whole of his property from being made liable for the whole of his debts ; and if the proceeds would be rateably distributed among them, according to the seniority of their respective liens, why should alienation, or any other act, done or attempted by the defendant, affect the rights of his creditors ? In other words, why should the fact that he has sold his property, place the appeal creditor in a better situation than if he had not sold it ? Can there be any good reason assigned, for supposing that the Legislature would have been influenced by any consideration whatever, to place the relative rights of the creditors themselves upon the happening or not of such a contingency ?

In cases of attachment, vigilance is rewarded by causing the first served to be first satisfied. But so sacred did the Legislature regard prior liens, that they would not permit even the attaching creditor to assert *his* lien before an older *judgment* creditor. But it is argued, that under the Act of 1822, a lien is given to an appeal judgment, as against not only the purchaser, but all other judgment creditors, not on account of any thing done by the creditors, but by the act of the debtor, in alienating his property, and which, it is admitted, it otherwise would not have had ; and that, too, when, perhaps, the elder judgment has followed the property, and brought it to market ! In this case, I believe, (I do not speak confidently, not having the papers before me,) the

fact is *accidentally* otherwise; still this does not weaken the force of the argument.

Entertaining these views of the Statute, I concur in the verdict of affirmance.

———

WARNER, J. dissenting.

The view which I take of the Act of the General Assembly, passed 19th December, 1822, necessarily compels me to dissent from the judgment of the Court in this case. It appears from the record before me, that Snelling and Buckner both obtained judgments against Charles Evans, in the Inferior Court of Talbot County, at the same term of the Court, in the year 1842. Evans, the defendant in the respective judgments, entered an appeal from the judgment obtained against him by Snelling, to the Superior Court, but did not enter an appeal from Buckner's judgment. Judgment was regularly entered up and signed, in in the Inferior Court, against the defendant, in both cases, at the same term of the Court. In March, 1846, the appeal cause was tried in the Superior Court, and Snelling's first judgment was confirmed. From the judgment rendered in favor of Snelling, on the appeal, confirming the first judgment against Evans, an execution issued and was levied on the property of Evans, the defendant, which property had been aliened and sold by Evans, after the signing of the judgment obtained by Snelling against him, in the Inferior Court, but before the signing of the judgment on the appeal. The property of Evans, so aliened and sold by him, between the signing of the first judgment and the signing of the judgment on the appeal, was sold by the Sheriff, by virtue of Snelling's *fi. fa.* and the proceeds of such sale remained in the hands of the Sheriff. At the October Term, 1849, of Talbot Superior Court, Snelling moved a rule against the Sheriff, requiring him to pay over to his *fi. fa.* the money in his hands arising from the sale of Evans' property. Buckner appeared and claimed the money on his *fi. fa.* and contended he was entitled to it, inasmuch as the *lien* of his judgment had priority in point of time over that of Snelling's judgment. The Court below decid-

ed that Buckner's judgment was entitled to the money, whereupon Snelling excepted.

The question presented by this record is, whether a judgment against a defendant, from which he enters an appeal, operates as a *lien* upon, and *binds* the property of such defendant, when the property is *alienated* and transferred by him *intermediate* the signing of the first judgment and the judgment on the appeal? If the property of the defendant which he alienates and sells, *intermediate* the signing of the first judgment and the judgment on the appeal, is *bound* for the payment of the judgment rendered on the appeal, then it follows, as a necessary consequence, that the *lien* attaches from the signing of the *first* judgment, for the reason, that the property being alienated and sold by the defendant, *before* the rendition of the judgment on the appeal, the latter judgment could not bind it.

The judgment on the appeal, being rendered *after* the defendant has sold the property, that judgment does not create a lien upon it or bind it; and if the property so alienated and sold by the defendant, is *bound* for the payment of the creditor's judgment on the appeal, the lien attaches, from the date of the *first* judgment, according to the provisions of the first section of the Act of 1822.

By the Judiciary Act of 1799, all the property of the defendant is bound from the signing of the *first* judgment. *Prince,* 426. How bound? For the payment of the judgment creditor's debt. The judgment creates a *lien* upon all the defendant's property, for the payment of that judgment, and if the defendant alienates his property after the date of the judgment, it is still subject to satisfy it. If there had been no appeal from Snelling's judgment, then it will be conceded that Buckner's and Snelling's judgments would have been entitled to a *pro rata* distribution of the money in the hands of the Sheriff, inasmuch as both were obtained at the same term of the Court, and both bound and created a lien upon the defendant's property. Does the appeal, by the defendant, from Snelling's judgment, vacate and destroy the lien created by the first judgment, so as to defeat his right to have a *pro rata* distribution of the money arising from the sale of property *alienated* by the defendant, applied to his judgment on the appeal, according to the *words* and *intention* of the Act of 1822? The preamble to that Act recites, "A contrariety of decisions

having taken place in the different Circuits in this State, as to the *time* when the property of the party against whom a judgment is entered, shall be bound, *Be it enacted,* That from and after the passing of this Act, all property of the party against whom a verdict shall be entered and a judgment signed thereon, in conformity to the provisions of the 26th section of the Judiciary Act of 1799, shall be bound from the signing of the *first* judgment, in cases where no appeal is entered; but in cases where an appeal is entered from the first verdict, the property of the party against whom the verdict is rendered, shall not be bound except from the signing of the judgment on the appeal, *except so far as to prevent the alienation by the party of his or their property, between the signing of the first judgment and the signing of the judgment on the appeal."* Prince, 451.

The object of this Statute is, to settle a *definite rule of decision,* as to the *time* when the *property* of the party, against whom a judgment is entered, shall be *bound.* The Statute declares, that all the property of the party shall be bound from the time of signing the *first* judgment, when no appeal is entered, affirming the Judiciary Act of 1799. The Statute then declares, that where an appeal is entered from the first verdict, the property of the party shall not be bound, except from the signing of the judgment on the appeal; that is to say, the property of the party against whom the first judgment shall be signed, shall not be bound from the signing of the first judgment, as declared by the Judiciary Act of 1799, where an appeal is entered, and *repeals* the Judiciary Act of 1799 to *that extent.* Then follows the *exception* expressly made by the Act, "Except so far as to prevent the *alienation* by the party of his, her or their property, between the signing of the first judgment, and the signing of the judgment on the appeal."

By the Judiciary Act of 1799, all the property of the defendant is bound, from the date of the *first* judgment. By the Act of 1822, the property of the defendant, when it has not been *alienated* between the date of the first judgment and the date of the judgment on the appeal, is not bound by the signing of the first judgment, but is only bound in cases where an appeal has been entered therefrom, from the time of signing the judgment on the appeal. But with regard to the property which the defendant has *alienated,* between the date of the *first* judgment, and the

date of the judgment on the appeal, that property is *bound* from the date of the *first* judgment, as declared by the Judiciary Act of 1799, and may be taken in satisfaction of the judgment rendered on the appeal. The Act of 1822 never was intended, and does not *repeal* that part of the Judiciary Act of 1799, which declares, that all the property of the defendant shall be bound, from the signing of the *first* judgment, so far as respects the property which the defendant has *alienated*, between the signing the first judgment and the signing the judgment on the appeal, because such property is *expressly excepted* from the operation of the Act of 1822. That Act substantially declares, that in cases where an appeal is entered from the first judgment, the property of the defendant shall not be bound, only from the time of signing judgment on the appeal, except when the defendant shall *alienate* his property, between the date of the first judgment and the date of the judgment on the appeal, and then the property, so alienated by him, shall be *bound* for the satisfaction of the judgment on the appeal, from the date of the *first* judgment, in the same manner as declared by the Judiciary Act of 1799. As I have before said, if the *lien* upon the property alienated by the defendant, is not created by the *first* judgment, it cannot be created by the judgment on the appeal, for the reason, that the defendant has *alienated* the property *before* the judgment on the appeal, and, therefore, the latter judgment could not bind it. I suppose it will be conceded, that Snelling might have levied on the property alienated, sold it, and applied the proceeds thereof in satisfaction of his judgment, but for the judgment of Buckner, which is claimed to have priority of lien. If the *first* judgment of Snelling did not create a *lien* on the property *alienated*—did not *bind* that property from its *date*—on what legal principle could his judgment on the appeal, obtained subsequently to the *alienation* of the property, proceed to sell it as the property of *the defendant ?* To authorize Snelling to sieze the property *alienated*, in the hands of the purchaser, as the property of *the defendant*, and sell it in satisfaction of his judgment, he must necessarily have had a *lien* upon it; and the property must have been *bound* by that lien, in the hands of the defendant, *before* the alienation thereof to the purchaser. When did that lien attach to the property sold by the defendant? When did the property *alienated* become *bound* for the satisfaction of Snelling's judgment ? Certainly not from the

time of signing judgment on the appeal, for, at that time, the defendant had sold it. The *lien* was created from the date of the *first* judgment, while the defendant was *the owner* of the property ; the lien was not created by the judgment on the appeal, *after the defendant had sold the property*. When Snelling obtained his judgment on the appeal, its lien related back to the date of the *first* judgment, so as to authorize him to seize and sell the property alienated by the defendant to the purchaser, *as the property of the defendant*. The property was seized in the hands of the purchaser, as *the property of the defendant*, by virtue of a judgment *lien* of *older* date than the purchaser's title, and was sold by virtue of *that lien, as the property of the defendant*, and the money in the hands of the Sheriff was raised from the sale of *the defendant's property*, by virtue of a lien which bound the property, of *equal* date with Buckner's lien. Both liens were created at the same term of the Court, and both were entitled to a *pro rata* distribution of the money arising from the sale of *the defendant's property*.

One of two propositions must be true, in my judgment. Snelling either had the right to seize the property in the hands of the purchaser, sold by the defendant, between the date of the first judgment and the judgment on the appeal, in satisfaction of his judgment lien against the defendant, or he had not. If it is conceded he had the right to seize and sell the property, by virtue of his *judgment lien, as the property of the defendant*, then his lien was created by the *first* judgment, which is of *equal* date with Buckner's judgment—for Snelling has no judgment lien of *older* date than the sale of the property by the defendant to the purchaser, but the *first* judgment—he has no other judgment lien but that of the *first* judgment, which could have *bound* the property in the hands of the *defendant's alienee*. If Snelling, then, had such a *lien*, created by his *first* judgment, as authorized him to seize and sell the property as the property of *the defendant,* does the fact that Buckner has a lien of *equal* date, have the effect to *vacate* or weaken Snelling's lien ? Holding, as I do, that Snelling's lien was created by the *first* judgment, and *bound the property alienated by the defendant*, from its date—Buckner's judgment having been obtained at the same term of the Court as Snelling's first judgment, their respective liens on *the property of the defendant*, which was sold, being of *equal* date—I am of the

opinion, that the money in the hands of the Sheriff ought to have been distributed to their respective liens, *pro rata.*

In *Hardee et al. vs. Stovall, Simmons & Co.* (1 *Kelly,* 92,) I had supposed the same construction was given by this Court to the Act of 1822, for which I now contend. In that case, Stovall, Simmons & Co. obtained a judgment against Byne, at November Term, 1842, of Burke Superior Court, from which an appeal was taken. At the November Term of the Court, 1843, the appeal was dismissed, by consent, and the first judgment confirmed by the order of the Court. While the cause was pending, on the appeal, Hardee *et al.* obtained judgments against Byne. On a motion to distribute money raised by a sale of the defendant's property, the question was made, whether the judgment of Stovall, Simmons & Co. had a lien on the money of the defendant, from the time of the dismissal of the appeal and the confirmation of the first judgment, or whether their judgment created a lien on the defendant's property from its date, before the appeal? One of the assignments of error in that case was, " that the Court erred in deciding, that when an appeal is entered in any cause in this State, the *lien* created by the *first* judgment (except so far as the same arises out of, and is authorized by the Act of 1822) on the property of the defendant, is not destroyed by said appeal."

The plaintiff in error in that case contended, that the *lien* of the judgment was *vacated* by the appeal, and that when the appeal was dismissed, and the first judgment confirmed, the lien of the judgment attached only from the *time* of such *confirmation,* and that Hardee's judgment having been obtained between the entering the appeal and the dismissal thereof, was entitled to the money. This Court ruled in that case, that Stovall, Simmons & Co. were entitled to the money, and affirmed the judgment of the Court on the assignment of error before recited. Speaking of the lien of the judgment, this Court said, "The truth is, that the lien of the judgment, at Common Law, is not *extinguished by the appeal, but suspended.* It is not true, although the appeal opens all the merits of the issue, that it *vacates* the *first* judgment or verdict. This effect is worked only when, there being a rehearing, there is a new verdict rendered, and a judgment on the appeal; and not even then, as we shall see, so as to authorize *alienation of property, intervening the two judgments.* The appeal is

entered, and, indeed, the privilege of the appeal is given, for the benefit of the appellant. After the appeal is entered, there are cases in which the appellee acquires, by that fact, additional rights; *but the rights of all other persons remain the same."*

In that case there had not been an *alienation* of property by the defendant, pending the appeal; but, according to my reading of that case, the principle is distinctly asserted, that an appeal does not *vacate* the first judgment, so as to destroy its *lien* on the defendant's property, pending the appeal; and if the lien of the first judgment is *not vacated* by an appeal, where there has been *no alienation of property by the defendant*, pending the appeal, I think the argument drawn from the Act of 1822, is much stronger, when there has been such an *alienation*, intermediate the two judgments.

According to my construction of the Judiciary Act of 1799, and the Act of 1822, and the construction given to the latter Act by this Court, in *Hardee et al. vs. Stovall, Simmons & Co.* I am of the opinion, the judgment of the Court below should be reversed. I am not willing to place it in the power of defendants to defeat creditors, equally vigilant, by giving such a construction to the Act of 1822, as will enable them to enter an appeal, in some particular cases, and then transfer their property, and defeat the lien of the judgment in such appeal cause, on the ground that the judgments not appealed from, have *priority* of date, when the appeal judgment creditor sells the property *alienated by the defendant*, between the signing of the first judgment and the judgment on the appeal; to say nothing of the titles to property which may be *disturbed* by the construction of the Act of 1822, which a majority of the Court feel it to be their duty now to give to it,